UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVER KARAFILI,<br><br>　　　　　　Petitioner,<br>v.<br><br>JAMES TILTON,<br><br>　　　　　　Respondent. | Civil No.07cv1372-BEN(NLS)<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE: DEFENDANT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 10] |

Enver Karafili ("Petitioner") is a California prisoner serving a term of life with the possibility of parole plus twenty-five years after being convicted of attempted murder and assault with a firearm. On July 26, 2007, he filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence [Doc. No. 1]. Petitioner also filed a Motion for Appointment of Counsel and Evidentiary Hearing [Doc. No. 3]. Respondent filed a Motion to Dismiss the Petition [Doc. No. 10], arguing that the Petition is barred by the applicable statute of limitations and therefore should be dismissed with prejudice. Petitioner filed an opposition [Doc. No. 11]. Petitioner concedes that his federal petition is untimely, but argues that the Court may consider the merits of his otherwise time-barred claims because he is entitled to equitable tolling due to mental incompetency and mental disease.

After a thorough review, the Court **RECOMMENDS** that the District Court **DEFER** ruling on Respondent's Motion to Dismiss [Doc. No. 10]. The Court **FURTHER RECOMMENDS** that Petitioner's Motion for Appointment of Counsel [Doc. No. 3] be **GRANTED** and Petitioner be

appointed counsel for the limited purpose of resolving the issue of whether Petition is entitled to equitable tolling of the statute of limitations in this case. Finally, the Court **RECOMMENDS** that the record of this case be augmented and both parties be ordered to file supplemental briefing on the issue of Petitioner's mental competency and the timeliness of his habeas petition.

## BACKGROUND

The following facts are summarized from the California state appellate court opinion denying Petitioner's direct appeal of his conviction.[1] [*Lodgment No. 1* (*People v. Karafili*, No. D035415, (Cal.Ct.App. Aug. 16, 2001)).]

Petitioner is a refugee from communist Albania. Prior to his conviction, Petitioner lived as a member of the Albanian community in San Diego, along with an individual named Muhamet Koci. Koci worked at the Big Save store on 30th Street in San Diego, for a gentleman named Mazen Abbas, the store's owner. Petitioner and Koci were friends until March 1999, when Koci called Petitioner a "faggot" one day at the store. Abbas overheard the exchange, and witnessed Petitioner become very angry with Koci since being called a faggot is very offensive in Albanian culture. In the meantime, Petitioner got a job working at the 88 Cent store across the street from the Big Save. His boss, Deda Makaj, was also a member of the Albanian community. Petitioner told Makaj that he hated the guys working across the street, and that he wanted to kill them. However, Makaj did not take Petitioner seriously.

On Saturday, September 11, 1999, Petitioner loitered in front of the Big Save store for approximately one hour, smoking, holding a plastic bag in his hand. Koci, who was working in the store that day along with Abbas' brother-in-law, asked Petitioner if he wanted to come into the store and have a drink. Petitioner declined. On Sunday, September 12, 1999, according to his own testimony at trial, Petitioner drank alcohol all day. On Monday, September 13, 1999, he woke up at approximately 4:00 a.m. and had several shots of liquor. At approximately 7:30 a.m., he left his home with a gun and went to the Big Save to speak with Koci. Petitioner encountered Koci in front of the store at approximately 8:00 a.m., and asked Koci why he had called Petitioner a faggot and why he badmouthed him to other

---

[1] This Court gives deference to state court findings of fact. *Sumner v. Mata*, 449 U.S. 539, 545-47 (1981) (stating that deference is owed to factual findings of both state trial and appellate courts).

members of the Albanian community.  He and Koci entered the store, at which point Koci telephoned another Big Save employee, Berenice Garcia, to let her know that he had opened the store for the day. Petitioner asked Koci to hang up the telephone so they could continue their conversation.  Koci said no, and referred to Petitioner using a distasteful Albanian slang term, "koqe."  This offended Petitioner, who drew his gun and demanded that Koci hang up the telephone.  According to Petitioner, Koci grabbed the gun and as Petitioner tried to move away the gun went off, shooting Koci.  According to Koci, who also testified at trial, he never grabbed for the gun; rather, Petitioner laid the gun on the counter, and as Koci started to stand, Petitioner fired the gun after telling him "goodbye," shooting Koci in the chest, just under the sternum.

      Garcia remained on the telephone line while these events unfolded, and testified at trial that she heard Koci call someone "koqe," and then she heard a crash.  She then heard Koci ask for help and he told her someone had shot him.  Garcia informed their boss, Abbas, who told her to call 911.  Abbas used his own cellular telephone to call 911 and drove to the Big Save.  When he arrived, he saw Koci on the floor, looking very pale.  When asked who had shot him, Koci responded that it had been Petitioner. San Diego police officer Damon Sherman arrived first at the scene, and found Koci lying on the floor with blood soaking through his shirt.  When Officer Sherman asked Koci who had shot him, Koci responded "Enver" - Petitioner's first name.  San Diego police officer Frank Pecoraro arrived at the scene next, and after receiving a description of Petitioner, began to search the neighborhood for him. Officer Pecoraro found Petitioner in a nearby park, waving his arms as if trying to attract someone's attention.  Officer Pecoraro pulled his police cruiser over, and as he exited the vehicle Petitioner laid face down on the sidewalk with his arms straight out.  Petitioner informed Officer Pecoraro that he "killed a man.  The bullets are in my front pocket.  The gun is in the plastic bag that is by the tree. Arrest me."  Police officers found the plastic bag, which contained clothes and an empty blue steel revolver with walnut grips and an empty shell casing.  Police recovered four .38 caliber shells from Petitioner's shirt pocket.  When officers informed Petitioner that Koci would survive the gunshot wound, Petitioner replied that he wished he had killed him, and that "if he doesn't die, you better kill me."  [*See Lodgment No. 1*, 2-6.]

/ / /

On March 1, 2000, a jury convicted Petitioner of attempted murder in violation of California Penal Code sections 664/187(a), as well as assault with a firearm in violation of California Penal Code section 245(a)(2). [*Petition*, 2.] Petitioner was sentenced to life in state prison with the possibility of parole for the attempted murder plus twenty-five years for the firearm enhancement. [*Lodgment No. 1*, 2.] Petitioner appealed, arguing that the trial court erred by failing to sua sponte instruct on attempted voluntary manslaughter as a lesser included offense of attempted murder, and by failing to give complete jury instructions for the great bodily injury enhancement to the attempted murder count. [*Id.* at 2.] On August 16, 2001, the appellate court rejected these arguments and affirmed Petitioner's conviction and sentence. [*Id.* at 13.] After his direct appeal was completed, Petitioner filed a *pro per* Petition for Review with the California Supreme Court. [*See Lodgment No. 2*.] On October 31, 2001, the California Supreme Court denied the petition without comment. [*See Lodgment No. 3*.]

In 2006, Petitioner commenced a series of state habeas corpus actions challenging the validity of his conviction. On August 1, 2006, Petitioner filed a Petition for Writ of Habeas Corpus with the Superior Court, which was denied on September 27, 2006. [*See Lodgment Nos. 4 & 5.*] On October 17, 2006, Petitioner filed a habeas petition with the Court of Appeal, which was denied on January 17, 2007. [*See Lodgment Nos. 6 & 7.*] On February 13, 2007, Petitioner filed a habeas petition with the California Supreme Court, which was denied on July 11, 2007. [*See Lodgment Nos. 8 & 9.*] All three petitions presented the following claims: (1) ineffective assistance of trial counsel based on failure to introduce a mental state defense at trial and failure to call mental health experts to present a mental state defense; (2) California Penal Code section 12022.53(d), as applied to him, violates the ex post facto clause; and (3) his sentence is cruel and unusual punishment. [*See Lodgment Nos. 4, 6 & 8.*] His final petition before the California Supreme Court also presented a fourth claim, alleging that the imposition of the upper terms for sentence enhancements constitutes error under *Cunningham v. California*, 541 U.S. __, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). [*Lodgment No. 8.*]

Following the denial of his state petitions, Petitioner filed this federal petition on July 26, 2007, raising four grounds for relief: (1) the state trial court failed to instruct the jury, sua sponte, on manslaughter as a lesser included offense to murder; (2) the state trial court failed to correct a defective jury instruction (CALJIC No. 17.19.5) by failing to define proximate cause and failing to tell the jury

that the person injured must not be an accomplice; (3) ineffective assistance of counsel based on trial counsel's failure to introduce a mental state defense at trial and failure to subpoena mental health experts to testify for his defense; and (4) his sentence is cruel and unusual punishment. [*Petition*, 6-9.] Respondent moves to dismiss the Petition, arguing that it is untimely, having been filed more than four years after the expiration of the applicable statute of limitations. [*Memorandum of Points and Authorities in Support of Motion to Dismiss ("Respondent's Memorandum")*, 4.] Petitioner has filed a motion seeking appointment of counsel as well as an evidentiary hearing [Doc. No. 3]. Petitioner also opposes Respondent's motion to dismiss [Doc. No. 11]. Petitioner does not dispute the tardiness of his federal petition, but urges the Court to toll the statute of limitations for equitable cause shown. [*Petitioner's Opposition*, 2.]

## ANALYSIS

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the state court's factual determinations are presumed correct, and the petitioner carries the burden of rebutting this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, Section 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondent contends the statute of limitations began to run when the judgment became final at the conclusion of direct review as defined in § 2244(d)(1)(A). Respondent further contends that because there is no basis for tolling, the instant action was filed more than four years late. [*Respondent's Memorandum*, 4.]

    *a)*    *The Statute of Limitations began to run on January 30, 2002*

Following the conclusion of Petitioner's direct appeal, the California Supreme Court denied further review on October 31, 2001. [*See Lodgment No. 3*.] Thus, Petitioner's case became final on January 29, 2002, when the ninety-day period for seeking review in the United States Supreme Court expired. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). The statute of limitations as calculated under § 2244(d)(1)(A) began to run the next day, January 30, 2002. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Petitioner had until January 29, 2003, absent applicable statutory or equitable tolling, within which to file his federal petition for writ of habeas corpus.

Petitioner does not argue, and the Court finds nothing in the record, to support an alternative calculation of the statute of limitations under § 2244(d)(1)(B). Petitioner does not appear to have been hampered in any manner in challenging his conviction due to state action. Petitioner also has not

alleged the applicability of a newly asserted constitutional right, and the Court therefore finds nothing to support an alternative calculation of the statute of limitations under § 2244(d)(1)(C). The record also does not support, and Petitioner makes no argument regarding, an alternative calculation of the statute of limitations under § 2244(d)(1)(D).

Accordingly, the Court finds that the statute of limitations began to run as to Petitioner's claims on January 30, 2002, the day after his conviction became final. Absent tolling of the statute of limitations, therefore, the last day Petitioner could have filed a timely federal habeas petition would have been January 29, 2003. Petitioner initiated this action on July 22, 2007, the date he handed his federal habeas petition to the prison authorities for mailing to the Court. (*See Certificate of Service attached to Petition*, Doc. No. 1; *see Houston v. Lack*, 487 U.S. 266, 276 (1988)(holding that for statutory tolling purposes, a petitioner is entitled to the benefit of the "mailbox rule" in determining the filing date of a *pro se* petition, which is the date the petition was presented to the prison authorities for mailing to the court).) Absent tolling, the instant action was commenced over four years late.

>    *b)    Statutory Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)*

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2). This statutory tolling will apply if a state habeas petition has been properly filed. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (holding that a properly filed state application complies with the applicable laws and rules governing filings, including the form of the application and time limitations). In *Carey v. Saffold*, the Supreme Court held the statute of limitations is tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled during the intervals between one state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the state court system. 536 U.S. 214 (2002); *see also Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999); *Welch v. Newland*, 267 F.3d 1013, 1016 (9th Cir. 2001) ("tolled period includes intervals between the disposition of a state court petition and the filing of a subsequent petition at the next state appellate level"); *Patterson v. Stewart*, 251 F.3d 1243, 1247 (9th Cir. 2001) (stating that the "AEDPA's one-year grace period is tolled during the pendency of properly filed state petitions challenging the judgment or claim at issue."); *cf.*

*Dils v. Small*, 260 F.3d 984, 986 (9th Cir. 2001) (court found no tolling between consecutive filings at the same level); *Lewis v. Mitchell*, 173 F.Supp.2d 1057, 1061 (C.D.Cal. 2001) (holding that the interval between a motion for sentence modification in the state superior court and a habeas petition in the superior court was not tolled pursuant to 28 U.S.C. § 2244(d)(2)).

Here, Petitioner did not file his first state habeas petition challenging his conviction and sentence until August 1, 2006, approximately three and a half years after the one-year limitations period for filing a federal habeas petition expired. [*See Lodgment No. 4*.] Petitioner filed his second state habeas petition on October 17, 2006, and the Court of Appeal denied the petition in part due to its untimeliness. [*See Lodgment No. 6*; *Lodgment No. 7*, 2.] Petitioner filed his third state habeas petition on February 13, 2007, approximately four years after the statute of limitations for filing a federal petition had expired. Petitioner embarked on collateral review in the state courts after the statute of limitations for filing his federal habeas petition had expired (absent equitable tolling during the first year the limitations period was running), and he therefore is not entitled to statutory tolling for the time the lower state court petitions were pending. *See Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001).

    *c)*    *Equitable Tolling*

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408 (2005); *see also Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 96 (1990); *Calderon v. U.S. Dist. Ct. (Kelly V)*, 163 F.3d 530, 541 (9th Cir. 1998), *citing Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996). Petitioner bears the burden of alleging facts that would give rise to tolling. *Pace*, 544 U.S. 408; *Smith v. Duncan*, 297 F.3d 809 (9th Cir. 2002); *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Lott v. Mueller*, 304 F.3d 918, 922 (9th Cir. 2002) (*quoting Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999)). In *Allen v. Lewis*, 255 F.3d 798, 801 (9th Cir. 2001), the Ninth Circuit concluded that the petitioner "must show that the 'extraordinary circumstances' were the but-for and proximate cause of his untimeliness." More recently, the Ninth Circuit reaffirmed this rule in *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005). In that case, the Court

pointed out that the determination vis-a-vis equitable tolling is "highly fact-dependent" and that the petitioner "bears the burden of showing that equitable tolling is appropriate." *Id.*

Respondent contends that Petitioner has failed to carry his burden of demonstrating that he is entitled to equitable tolling because at the time Respondent filed the pending motion to dismiss, Petitioner had not stated any grounds for equitable tolling. [*Respondent's Memorandum*, 6.] However, in his opposition to Respondent's motion to dismiss, Petitioner argues that he is entitled to have the statute of limitations for filing his federal habeas petition tolled for equitable reasons. Petitioner states that he is proceeding in this matter with the assistance of another inmate due to a mental disorder which renders him incapable of litigating on his own. [*Petitioner's Opposition*, 6.] Specifically, Petitioner claims that his mental incompetency and mental disease prevented him from filing his federal habeas petition in a timely manner. [*Id.* at 4.] Petitioner asserts that he suffers from major depressive disorder, paranoia, chronic stress, and alcohol dependency, and takes various psychotropic medications for treatment of his mental disease. [*Id.* at 5.] As a result, Petitioner argues that he has not been able to understand the nature of his post-conviction proceedings, and based on applicable case law in the Ninth Circuit, qualifies for equitable tolling. [*Id.*, *citing Laws v. Lamarque*, 351 F.3d 919, 922-24 (9th Cir. 2003); *Calderon v. U.S. District Court (Kelly V)*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc), overruled in unrelated part by *Woodford v. Garceau*, 538 U.S. 202 (2003)).]

Based on his mental disorder, Petitioner requests that the Court deny Respondent's motion to dismiss. Petitioner also requests that the Court appoint counsel to represent him in this matter and hold an evidentiary hearing to substantiate his equitable tolling claim. [*Id.* at 6; *Petitioner's Motion for Appointment of Counsel and Evidentiary Hearing*, 2.] Petitioner asserts in support of his request for appointment of counsel that he "barely speaks English and does not understand most of the English language" because he is Albanian and originally from Europe. [*Id.*] As such, he did not understand the events surrounding his trial or his appeals and writs. In support of his request for equitable tolling, Petitioner cites the *Calderon* case, in which the Ninth Circuit held that mental incompetency may be an "extraordinary circumstance" warranting equitable tolling. *Calderon (Kelly V)*, *supra*, 163 F.3d at 541.

When a petition is otherwise untimely but the record creates a "genuine basis for concern" about the petitioner's mental state, *id.*, a district court must consider whether mental illness during the

operative time period made it "impossible" for the petitioner to file a timely petition. *See Calderon*, *supra*; *see also Herbst v. Cook*, 260 F.3d 1039, 1042, 1044 (9th Cir. 2001). A mere showing of mental illness is insufficient, however. A petitioner who asserts entitlement to equitable tolling on grounds of mental illness must show that his illness *actually* rendered him unable to file his federal habeas petition before the limitation period expired. *See e.g., United States v. Sayetsitty*, 2006 WL 1722300, at *4 (D. Ariz. June 19, 2006) (no equitable tolling for physical illness and mental incompetency because the § 2255 movant failed to present any evidence that the alleged infirmity and incompetence prevented him from filing a timely motion); *Shafer v. Knowles*, 2003 WL 22127878, at *2 (N.D.Cal. Aug.14, 2003)(no equitable tolling where the prisoner was in a mental health facility, had twice attempted suicide, had several brief crisis bed stays, and was taking medication for his mental illness but failed to show that he was mentally incompetent for purposes of attending to his legal affairs); *Howell v. Roe*, 2003 WL 403353, at *3-4 (N.D.Cal. Feb.20, 2003) (no equitable tolling where the prisoner had been suicidal and/or depressed and was taking medications to treat his mental illness but did not provide evidence of incompetence); *Austin v. Ramirez-Palmer*, 2001 WL 1167553, at *2-3 (N.D.Cal. Sept. 25, 2001) (no equitable tolling where the prisoner had a mental illness and was taking several psychotropic medications but was well enough to hold a prison job and failed to show he could not tend to his legal affairs during the relevant time period); *Ross v. Hickman*, 2001 WL 940911, at *2-3 (N.D.Cal. Aug. 10, 2001) (no equitable tolling where the prisoner was enrolled in a prison mental health program and was receiving psychotropic medication but was not mentally incompetent and failed to show that his history of schizophrenia and substance abuse prevented him from filing a habeas petition on time); *United States v. Hill*, 2000 WL 1389594, at *2 (D.Or. Sept.18, 2000) (no equitable tolling where the prisoner asserted diminished mental capacity but was examined and found competent to proceed at the time of his guilty plea and was examined again in a subsequent prosecution in another state and was found to be suffering from no mental illness or psychotic disorder). The determination of a prisoner's entitlement to equitable tolling "turn[s] on an examination of detailed facts." *Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002); *see also Whalem/Hunt v. Early*, 233 F.3d 1146, 1147 (9th Cir. 2000) (en banc).

Accordingly, the undersigned shall carefully consider the evidence concerning Petitioner's entitlement to equitable tolling.

Petitioner currently resides at California Medical Facility ("CMF") which is located in Vacaville, California, and houses a general acute care hospital, correctional treatment center, licensed elderly care unit, in-patient and out-patient psychiatric facilities, a hospice unit for terminally ill inmates, housing and treatment for inmates identified with AIDS/HIV, general population, and other special inmate housing. (*See California Medical Facility Mission Statement*, available at http://www.cdcr.ca.gov/Visitors/Facilities/CMF.html, last accessed 2/14/08.) Additionally, the Department of Mental Health operates a licensed, acute care psychiatric hospital within CMF.

The current record of this case contains some evidence of Petitioner's mental condition. Petitioner attached as Exhibit "C" to his petition two orders of the San Diego Superior Court which permitted psychologists to examine and interview Petitioner prior to his trial, in October and November 1999, respectively. Petitioner also attached as Exhibit "D" to his petition his post-conviction prison medical records, including mental health reports. These records indicate the following. On April 11, 2000, prison staff referred Petitioner for mental health services based on his history of psychiatric care, his need for a reassessment of his psychiatric condition, and for pyschotropic medication review. (*See Petition*, Ex. "D," 2.) On December 21, 2005,[2] a prison staff clinician prepared a Mental Health Interdisciplinary Progress report after evaluating Petitioner. (*Id*. at 5-8.) The clinician found Petitioner to be an intelligent man, able to care for his basic needs, but isolated due to his language barrier. (*Id*.) In October and November 2005, prison staff placed Petitioner on "single cell status" due to mental instability after he was assaulted and reported anxiety, paranoia, and nightmares. (*Id*. at 4.) Also included in Exhibit D are multiple Case Manager Progress Notes, dating from July 21, 2005 through June 6, 2006, chronicling Petitioner's ongoing treatment for severe major depressive disorder with psychotic features. (*Id*. at 10-26.) During this time period, staff physicians have prescribed and Petitioner has taken various doses of Risperidone (used to treat schizophrenia and symptoms of bipolar disorder and manic depression). (*Id*. at 3.)

Exhibits C and D, attached to the petition and summarized above, constitute the sum of Petitioner's evidence to support his claim for equitable tolling. No expert medical declarations have been submitted attesting to the likelihood of Petitioner's having been so cognitively impaired that he

---

[2] The medical records submitted by Petitioner do not contain any reports or documents from the years 2001-2004.

1 was unable to file his petition in a timely manner.  Furthermore, Petitioner has presented no medical
2 evidence detailing his psychiatric condition during the time period in which the statute of limitations
3 was running, between January 30, 2002 and January 29, 2003.  Exhibit D contains records of
4 Petitioner's treatments only for the years 2005 and 2006, with only several pages of the exhibit relating
5 to events prior to that time.  To the extent that Petitioner offers evidence that psychologists examined his
6 mental state prior to his trial in 2000 in Exhibit C, he only attached the declaration of his trial counsel
7 and the subsequent Court orders allowing the psychologists access to visit him and examine him; he
8 does not present evidence of their diagnoses or conclusions.  Presumably, the state psychologists found
9 him competent to stand trial, as well as testify in his own defense, since he did both.  Even if Petitioner
10 presented the Court with evidence of his competency prior to and during trial, that evidence would still
11 be irrelevant to the time period during which he needed to file his federal habeas petition, which came
12 several years later.

13       The prison staff's clinic progress notes from the 2005-2006 period reflect that Petitioner
14 participated in group therapy during that time period, and had frequent one-on-one meetings with mental
15 health staff, was assessed regularly by a treatment team, and was seen in the mental health clinic from
16 time to time.  During the period, Petitioner was regularly assessed as stable psychiatrically, and all
17 aspects of his mental health were found to be within normal limits throughout that time.  Staff
18 repeatedly found Petitioner stable on his medications with no side effects and recorded that Petitioner's
19 sleep, appetite, and energy level were good.  (*See Petition*, Exhibit "D," 13-26.)

20       Based on the current record, the Court cannot find that extraordinary circumstances beyond
21 Petitioner's control made it impossible for him to file a federal habeas petition on or before January 29,
22 2003.  Petitioner has not carried his burden of showing that he is entitled to equitable tolling.  However,
23 Petitioner has submitted evidence which substantiates his claim of mental disorder, and as such, the
24 Ninth Circuit's holding in *Laws v. Lamarque*, 351 F.3d 919 (9th Cir. 2003), controls this case.  In *Laws*,
25 the court held that when a petitioner submits an un-rebutted allegation in a verified complaint that he
26 was mentally incompetent during the AEDPA statute of limitations period, the district court is *required*
27 to "allow[ ] discovery or order[ ] expansion of the factual record." *Id.* at 924.  The court reaffirmed that
28 equitable tolling is available in this circuit only when "'when extraordinary circumstances beyond a

prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" *Id.* at 922, *citing Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). The *Laws* Court, *id.*, also noted that grounds for equitable tolling under § 2244(d) are "highly fact-dependent," *quoting Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000). The court held that it was an abuse of discretion for the district court to deny Laws' petition, where he claimed he was mentally ill during the period he was entitled to equitable tolling, without the court having ordered development of the factual record supporting the claim. *Id.*, at 922-23. The court observed that it had previously "held that a 'putative habeas petitioner's mental incompetency [is] a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control,' so 'mental incompetency justifies equitable tolling' of the AEDPA statute of limitations." *Laws*, *supra* at 923, *citing Calderon v. U.S. Dist. Ct. (Kelly V)*, *supra*, 163 F.3d at 541. The court delineated an exact legal standard to apply when a petitioner requests further development of the record to support his entitlement to equitable tolling, as Petitioner in this case has done: to secure an evidentiary hearing, a petitioner must make a "good-faith allegation that would, if true, entitle him to equitable tolling." *Id*.

Here, Petitioner has submitted a verified habeas complaint, along with a motion and opposition to the instant motion, both signed under penalty of perjury, alleging mental incompetence during the relevant time period. Additionally, Petitioner submits part of his prison medical record, at least a small fraction of which contains records pre-dating the relevant time period, in which prison staff referred Petitioner for mental health services based on his history of psychiatric care, his need for a reassessment of his psychiatric condition, and for pyschotropic medication review. (*See Petition*, Ex. "D," 2.) Petitioner went for a period of years, from 2003 through 2006, without pursuing any collateral appeals, at the state or federal level. Beginning in 2006, when Petitioner commenced his collateral actions, he did so only with the assistance of a fellow inmate. Because the record is currently devoid of any medical records from that time period, the Court cannot determine whether his mental state was the "but for" cause of his failure to pursue his post-conviction remedies. Respondent has not submitted any evidence rebutting Petitioner's allegation of mental incompetence. In accordance with *Laws*, an evidentiary hearing may be necessary in order for Petitioner to substantiate his claim of entitlement to equitable tolling. However, an evidentiary hearing is not required or needed if a court has sufficient

facts before it to fully and fairly rule on the merits of the disputed issues. *Blackledge v. Allison*, 431 U.S. 63, 74-81 (1977). In addition, the need for an evidentiary hearing may be obviated by expansion of the record. *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir. 2000). The Court finds that augmentation of the current record to include, for example, Petitioner's mental health/medical records from 2000 through the present, the entirety of his current period of incarceration, may provide the Court with sufficient facts upon which to determine whether Petitioner is entitled to equitable tolling of the statute of limitations due to his alleged mental incompetency.

Accordingly, the Court **RECOMMENDS** that the District Court **DEFER** ruling on Respondent's Motion to Dismiss [Doc. No. 10]. The Court **FURTHER RECOMMENDS** that Petitioner's Motion for Appointment of Counsel [Doc. No. 3] be **GRANTED** and Petitioner be appointed counsel for the limited purpose of resolving the issue of whether Petition is entitled to equitable tolling of the statute of limitations in this case. Finally, the Court **RECOMMENDS** that the record of this case be augmented and both parties be ordered to file supplemental briefing on the issue of Petitioner's mental competency and the timeliness of his habeas petition.

## CONCLUSION

Based on the foregoing, Petitioner's claims are barred by the one-year statute of limitations in Title 28, United States Code, section 2244(d), unless he can establish that he is entitled to equitable tolling of the limitations period. The undersigned finds that Petitioner has made a "good-faith allegation that would, if true, entitle him to equitable tolling," *Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir. 2003), and therefore **RECOMMENDS** that the District Court **DEFER** ruling on Respondent's Motion to Dismiss [Doc. No. 10]. The Court **FURTHER RECOMMENDS** that Petitioner's Motion for Appointment of Counsel [Doc. No. 3] be **GRANTED** and Petitioner be appointed counsel for the limited purpose of resolving the issue of whether Petition is entitled to equitable tolling of the statute of limitations in this case. Finally, the Court **RECOMMENDS** that the record of this case be augmented and both parties be ordered to file supplemental briefing on the issue of Petitioner's mental competency and the timeliness of his habeas petition.

///

///

1    This report and recommendation by the undersigned Magistrate Judge is submitted to the United
2    States District Judge assigned to this case, pursuant to the provisions of Title 28, United States Code,
3    section 636(b)(1).
4    **IT IS ORDERED** that no later than *__March 20, 2008__* any party to this action may file written
5    objections with the Court and serve a copy on all parties.  The document should be captioned
6    "Objections to Report and Recommendation."
7    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and
8    served on all parties no later than *__March 28, 2008__*. The parties are advised that failure to file
9    objections within the specified time may waive the right to raise those objections on appeal of the
10   Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
11   **IT IS SO ORDERED**.
12   DATED: February 20, 2008

Hon. Nita L. Stormes
U.S. Magistrate Judge